# WILBERT BARTON, the younger *v.*
# STATE OF MARYLAND

[No. 33, September Term, 1980.]

*Decided October 10, 1980.*

The cause was argued before GILBERT, C. J., and WILNER and WEANT, JJ.

*Gerald A. Kroop,* with whom was *Paul Michael Polansky* on the brief, for appellant.

*Bonnie Travieso, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Richard B. Rosenblatt, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *William Monfried, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

WILNER, J., delivered the opinion of the Court.

In the early morning hours of June 9, 1979, appellant shot and killed George Glen Hargrave. He claimed that he acted in self-defense — that Hargrave was advancing on him with a knife following an argument that the two of them had had a few minutes earlier; but a jury in the Criminal Court of Baltimore rejected that defense and convicted appellant of second degree murder and use of a handgun in the commission of a crime of violence.

Because the court gave an erroneous instruction to the jury that was critical to the issue of self-defense, and declined to give a proper instruction that was requested, however, it becomes necessary for us to reverse the convictions.

The evidence showed that, on the evening of the shooting, appellant, his girlfriend Wanda, and possibly another couple went out to do some partying. They met Hargrave, whom they knew, at one of the bars they patronized, and ultimately he accompanied them back to 113 South Ann Street, where appellant and Wanda were then living. The drinking and partying continued until about 4:30 a.m., when most of the people either left or went to bed. Appellant and Hargrave, not being ready to retire, began arm wrestling, spicing the contest with wagers on which of them was the stronger. This, unfortunately, led to an argument, which led to a shouting match, which led to some pushing.

At this point, Marvin Woods, one of the owners (or lessees) of the house, intervened. He told appellant to go upstairs and cool off, and he told Hargrave, who had been a mere guest, to leave. After a few minutes, appellant came back down; and, as he reached the bottom of the steps, he noticed that Hargrave was still there. Appellant claims that Hargrave then charged at him with a knife, which prompted him to shoot the assailant in self-defense. The State contends that the shooting was deliberate and unprovoked — that appellant had gone upstairs, loaded his gun, and returned in order to kill Hargrave. There were no witnesses to the shooting, and, when the police arrived, there was no knife in sight.

618

This evidence clearly generated a genuine issue of self-defense to be resolved by the jury; the State makes no contrary contention. The law, in Maryland, pertaining to self-defense was set out by the Court of Appeals in *Bruce v. State,* 218 Md. 87 (1958), and again in *DeVaughn v. State,* .232 Md. 447 (1963). One aspect of that law is the duty that one has "to retreat or avoid danger if such means [are] within his power and consistent with his safety" (*Bruce,* 218 Md. at 97); and, ordinarily, to invoke the defense successfully, the defendant must show that it was not possible to retreat safely, either at all or any farther than he had.

But there is an exception to the requirement that a person retreat. If the peril — the attack — occurs in his home, his dwelling place, he need not retreat from it, but may stand his ground and use whatever force is reasonable (including, if necessary, fatal force) in order to repel the attack and defend himself. He is not bound to flee and become a fugitive from his own home, for, if that were required, there would, theoretically, be no refuge for him anywhere in the world. *See Jackson v. State,* 31 Md. App. 518 (1976). This exception to the "retreat" rule is commonly known as the "castle" doctrine, the name being derived from the bedrock (but, unfortunately, somewhat hackneyed) principle that "a man's home is his castle" and his ultimate retreat. *Gainer v. State,* 40 Md. App. 382, 388, *cert. den.* 284 Md. 743 (1978).

The court below concluded that the "castle" doctrine was not applicable in this case. It thus instructed the jury that a person — to wit, the appellant — was required to retreat if the means to do so were within his power, and that, if "he fail[ed] to retreat or withdraw when he [could] safely do so, then the homicide is not justifiable." Consistent with its belief, the court refused to give a contrary instruction based upon the "castle" exception.

Appellant, 20 years of age, was originally from North Carolina. About three or four weeks before this tragic episode, he and his girlfriend Wanda (a/k/a Carol) had a "misunderstanding," and Wanda moved to Baltimore, taking up residence with her two brothers, Meareno and

Marvin Woods, at 113 South Ann Street. A few days later, appellant followed her up here, joining her in residence at her brothers' home. At the time, he had no definite plans — to stay or to return to North Carolina — but "was wanting to see what Wanda had in her mind." The "misunderstanding" was apparently resolved; appellant said, without contradiction, that "me and her got things straightened out and we decided to stay together in Baltimore," and that they planned to continue living at 113 South Ann Street "[u]ntil I got enough money for us to move out on our own." [1] This arrangement was apparently agreeable with Marvin and Meareno who not only let him stay there with Wanda but also found a temporary job for him (unfortunately, the job was working for the victim, George Glen Hargrave, for whom Marvin also worked).

The evidence adduced in this regard fairly permits the inference that 113 South Ann Street was appellant's only place of shelter in Baltimore; it is where he slept, ate, parked his car, and stored such of his belongings as he brought with him from North Carolina.

Notwithstanding this evidence, and the inferences that might properly be drawn from it, the court, in denying appellant's request for an instruction on the "castle" doctrine, stated, "I don't think this was his home. I think this was just a temporary abode that he had. . . [H]e was up here temporarily for a limited purpose and was going to go right back to North Carolina." When contradicted by defense counsel, the court replied, "All right, that they had planned to move out. But this was only a temporary abode. He was a guest there and there was no testimony that he paid any rent or had any proprietary or leasehold interest in the property whatsoever."

In taking this approach, the court misunderstood the law. We said in *Gainer, supra,* 40 Md. App. at 388, that one need not be the head of the household to avail himself of the "castle" exception. Rather, we concluded that any member of

---

1. Wanda confirmed that she and appellant "were living together" and "were close." They occupied the middle bedroom on the first floor of the house.

the household, whether or not he or she has a proprietary or leasehold interest in the property, is within its ambit; and, to determine who is included within the household, we looked to the analogous doctrine as it applies in the civil law. In particular, we quoted, with obvious approval, from Restatement of Torts Second (1965), § 65, comment h, defining the term "dwelling place" in the context of the "castle" doctrine: [2]

> "The phrase 'dwelling place' is used in this Section to denote any building or habitation, or part of it, in which the actor is at the time temporarily or permanently residing and which is in the exclusive possession of the actor, or of a household of which he is a member. Only that part of the building or other habitation which is actually used for residential purposes is a dwelling place. *Thus, a man's house is the dwelling place of himself, his family, his servants, and for the time being, the dwelling place of one who is residing, however temporarily, in the house as a guest.* It is not the dwelling place of a visitor, social or business, who comes to the house for a particular purpose and not to reside therein." (Emphasis supplied.)

The Court of Appeals implied essentially the same rule in *Crawford v. State,* 231 Md. 354 (1963). Noting that the rules regarding the defense of one's *dwelling* "are generally similar" to those governing the defense of one's *person,* the Court, in enunciating the "castle" doctrine in regard to the defense of dwelling, quoted with approval this passage from Clark and Marshall, *Law of Crimes,* § 7.03 (6th Ed., Wingersky Rev.), pp. 436-37:

> "* * * A man is not bound to retreat from his house.

---

2. Sections 63-65 set forth the law of self-defense in the civil context, § 65 dealing, in particular, with the use of force (in self-defense) threatening death or serious bodily harm. The section, in that regard, clearly recognizes the "castle" doctrine, stating, in part, that a person need not retreat if attacked "within his dwelling place which is not also the dwelling place of the other. . . ." Comment h, as noted, defines the term "dwelling place" in that context.

He may stand his ground there and kill any person who attempts to commit a felony therein, or who attempts to enter by force for the purpose of committing a felony, or of inflicting great bodily harm upon an inmate. In such a case the owner or any member of the family, *or even a lodger in the house,* may meet the intruder at the threshold, and prevent him from entering by any means rendered necessary by the exigency, even to the taking of his life, and the homicide will be justifiable." 231 Md. at 361 (Emphasis supplied.)

*Cf. Law v. State,* 21 Md. App. 13 (1974).

Upon these principles, it is apparent that the court took too restrictive a view of the "castle" doctrine. The evidence sufficed to establish that appellant was indeed a member of the household at the time of the affray; and that, for purposes of the law of self-defense, he was then in his dwelling and had no duty to retreat. This was especially true with respect to Hargrave who was a mere guest and not himself a member of the household.

Appellant has raised a number of other issues, primarily of an evidentiary nature. None involve the legal sufficiency of the evidence, however; and, in light of our determination of the first issue, we shall decline to consider them.

> *Judgments reversed; case remanded for new trial; Mayor and City Council of Baltimore to pay the costs.*